Owen, C. J.
The question for our consideration is whether the facts found by the circuit court, considered with such facts as stand admitted by the pleadings, justified that court in finding for the defendants.
Upon the general principles governing the question involved, there is no controversy between counsel. The counsel for defendant say, in argument:
“ With the general proposition, that a trustee cannot become a purchaser at his own sale, directly or indirectly, we have no controversy; and counsel for plaintiff might have saved the labor of citing the numerous authorities on that point. This is an elementary principle. We claim that the case at bar is not one for the application of that principle.”
*518 The principle is fundamental that trustees are to be held rigidly within their powers in the execution of the trusts confided to them, and that they shall not become personally interested in the subject of the trust.
In the case before us, the order of sale, the sale thereunder, the return thereof, and the order of confirmation, were unassailable, so far as the form of proceedings presented for the consideration of the probate court was concerned.
For this reason no significance attaches to the finding of the court (12) that: “ No proceedings have been commenced in the probate court to vacate or modify these orders.”
Certain facts appear, however, by the admissions of the pleadings and the findings of the court below, which challenge the grave consideration of this court.
(1.) It became necessary for the administrator to make sale of the lands in question.
(2.) He procured from the probate court an order to sell them at public auction, and made such sale to John Scott.
(3.) On the 6th day of August, 1878, he executed a deed for the premises to Scott, and left it with his counsel for the purchaser, upon the latter giving notes and mortgage for the deferred payments, which were made and left with the counsel for the administrator.
(4.) No money was ever paid by Scott to the administrator. The court found (11) that no money passed hands at the sale. The administrator trusted Scott to “ giving him credit for the hand money in his bank account.” It does not appear that this was done. It does not appear that there was any agreement to do so. The administrator simply trusted Scott to do it. It does appear, however, from the 14th finding that it never was done : “ The only consideration given by Caldwell was his assumption of the obligation of Scott as purchaser, and his verbal agreement to discharge him from liability as purchaser.” Thereby the individual became debtor to himself as administrator, and the administrator became creditor of himself as an individual; — a complicated and embarrassing relation for a trustee to assume towards the trust estate in his hands for administration.
*519 If the hand money had passed to the credit of the administrator on his bank account, then part, at least, of the consideration of the sale to him by Scott would have been the restoring in some form of this money to Scott or his bank. The finding of the court (11) that: “Had the money been paid to the administrator he would have deposited it with Scott to his bank account at the time,” is in no legal sense a finding of any substantive fact. At best it is but an ex post facto prophesy, based upon mere conjecture, of what might have, but never has, happened.
(5.) The deed was never, in fact, delivered to Scott; the mortgage left by the administrator with his counsel was never recorded. The trust he undertook was never performed.
(6.) On the 13th day of August, 1878, just one week after the deed was left with the counsel, we find the administrator in possession of a deed to himself individually from Scott, purporting to convey the same lands to him in fee, and claiming, as he ever since has, to be the absolute owner thereof in fee-simple.
(7.) The consideration named in the deed from Scott to the administrator is $6,500. Even if the transaction were otherwise in good faith this recital is a suspicious fact. It is not true. In the most favorable view we can take of it, it is just $500 from the truth. Whatever the purpose of this false recital may have been, it is misleading; its only effect is to deceive ; and it is wholly unexplained. Having acquired, during the course of his administration, a large proportion of the trust estate, it behooved the administrator to explain every circumstance to which suspicion could justly attach.
Much reliance seems to be placed upon the finding (15), that prior to and at the sale to Scott, there was not, and had not been, any understanding, agreement, or conversation between him and Scott in relation to the purchase, etc.
While this finding exonerates Scott from suspicion of collusion, the question of the good faith of the defendant in attempting to acquire for himself the title to the property it was his duty to administer, is left without a finding.
*520 Giving this finding its due weight, the fact still remains, that without executing the order of sale which the probate court had made, either in its letter or spirit, we find the administrator in possession, and claiming to be the absolute owner of the lands which it was his duty to convert into money to be administered under the law according to the will of the testator. It is not to be supposed that in taking the place of the purchaser at the sale, and assuming the latter’s obligation to pay, he contemplated a losing bargain for himself. The lands were appraised at $9,000. The petition alleges this sum to be their value. This is not denied in a form to raise a substantial issue. This is the form of denial: “This defendant denies that at the time of said sale the said premises were of the value of nine thousand dollars, or that said premises could then be sold for more than six thousand dollars.”
As to the second clause of this denial, it is enough to say that there is no such allegation in the petition, as that which the denial assumes. This supposed issue is a mere phantom; but if it was substantial it ignores the question of the actual value of the lands. The first denial quoted above aptly illustrates what is known in pleading as a negative pregnant. It admits the value of the lands to be any sum less than $9,000. 2 Bates Pl. 800. It is not necessary to, and wc do not hold, that if, upon issue taken in this form, trial had proceeded without objection, by motion or otherwise, to the form of the denial, and a finding had been made upon it, that the lands were worth but $6,000, such finding should be disturbed or ignored by us now. But as the issue of profit or advantage was not passed upon by the trial court, it is not unfair to hold the defendant to the issue as joined by him. While, by an established principle, it is immaterial that the trustee gained no advantage from his dealings with the trust estate, and acquiring it in his own name, if it affirmatively appear that material gain or advantage has resulted to the trustee from such transaction, this is fatal to its validity. As the issues stand upon the pleadings, they leave the defendant subject to the just imputation that if the transaction by which he claims to have acquired title to the lands in question is to abide, it will be so to *521 his substantial advantage and profit. The theory of the plaintiff’s case, is that to the extent of these lands, the trust confided to the defendant has never been executed, and that he now holds them, subject to administration, and in trust for the beneficiaries, of the will of the testator; that he refuses to proceed with the execution of such trust, claiming to be the absolute owner in fee, in his individual right, of these lands, wherefore the plaintiff seeks to compel the execution of such trust. Upon this theory, if properly assumed, he sought the proper tribunal — the court of common pleas. The probate court affords no remedy to a party seeking to set aside such conveyance, so as to compel an administrator, executor, or testamentary trustee, to perform a trust which he refuses to execute. This is peculiarly within the province of a court of general equity jurisdiction. Nor is it an answer to the plaintiff’s demand for relief, that an adequate remedy was afforded him by exceptions to the account of the administrator in the probate court. He was not required to assume an attitude which had the appearance of waiving the full execution of the trust or ratifying a radical departure from it.
There is no middle ground — no compromise ground — between the assumption and full execution of his trust upon which such a trustee can stand and say he has discharged the duties which his relation imposed upon him.
Barrington v. Alexander, 6 Ohio St. 189, was a case in which an administrator had obtained a deed to himself from the purchaser of lands (sold by the former in his fiduciary capacity), who had paid no part of the purchase-money. A bill was filed by the widow and heirs to set aside the sale, and for a re-sale. The relief was granted. The court did not find that the administrator employed any artifice or collusion to secure the property to himself. Speaking for the court, Bowen, J., said:
“ But whether there was, on the part of the administrator, any actual collusion or artifice employed to secure the property to himself, need not essentially affect the determination of this case. He held a fiduciary relation to the estate of his inestate. * * * If the purchaser, to whom the land is struck off, fail to comply with the terms of his purchase, the property shall *522 again be offered for sale. To permit the administrator to substitute himself for a delinquent purchaser, would enable him to defeat all genuine competition by receiving the bid of an irresponsible man, and afterward turn it to his own account by voluntarily assuming the place of such bidder, and thus acquire any advantage which the ownership of the property may offer. This would be too dangerous a rule to govern administrators or any other class of trustees in the execution of powers over the trust property committed to their care. The fiduciary character of the administrator toward the land of the estate does not terminate as soon as he makes a sale of it. He must obtain and hold securities for the payment of the purchase-money.” The writer of the above cites with approval the following language of Chancellor Kent in Davone v. Fanning, 2 Johns. Ch. 252, used in a discussion of this general subject: “ However innocent the purchase may be in a given case, it is poisonous in its consequences. The cestui que trust is not bound to prove, nor is'the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power, distinctly and clearly, to show it. There may be fraud, and the party not able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the cestui que trust to come, at his own option, and without showing actual injury, and insist upon having" the experiment of another sale. This is a remedy which goes deep, and touches the very root of the evil.”
The reasoning of these two cases applies with peculiar force to the case at bar. The remedy which the plaintiff selected is the one pre-eminently suited to the object of cutting off all opportunity and all temptation for the administrator to divert the trust property from the true and legitimate course of administration to the uses of his own personal and private gain.
The mere presence in the probate court at the time of the third settlement of the administrator, wherein he charged himself with the purchase-price of the lands, is not sufficient to estop the plaintiff to call in question the defendant’s claim of ownership of the land in his own right. On that same day the *523 proceeding below was commenced. Nor does the lapse of time carry with it such evidence of acquiescence, as should work such estoppel. The plaintiff was largely indebted to the estate during all that time, withholding payment and possibly thereby delaying the settlement of the estate. No facts are shown which can be construed to work an estoppel or show acquiescence in the method of administration • as against the plaintiff. There are considerations of public policy requiring the utmost fidelity and a rigid compliance with all his fiduciary obligations which forbid this court prosecuting a diligent search for grounds of estoppel, acquiescence, waiver or excuse, for the purpose of relieving such a trustee from the uncompromising discharge of his trust.
This court has frequently declared with emphasis its disapproval of all schemes and devices by which trustees may seek, even with honest motives, to acquire in their own right, the trust property committed to their hands for administration in the interests of beneficiaries whose rights should be guarded with scrupulous fidelity. Any relaxation of this salutary principle would be full of peril and uncertainty. Armstrong v. Huston, 8 Ohio, 552; Welsh v. Perkins, 8 Ohio St. 52; Piatt v. Longworth, 27 Ohio St. 196; Glass v. Greathouse, 20 Ohio, 517; Riddle v. Roll, 24 Ohio St. 572;. Mitchell v. Dunlap, 10 Ohio, 117.
The act of the administrator in giving his own individual obligations to Florence Me. L. Welsh, and a mortgage on the lands of the testator, to secure them, as a means of satisfying her legacy of $2,500, which the testator directed to be paid out of the proceeds of such lands, was such a radical departure from the plain and legal course of administration, as to constrain us to record our emphatic disapproval of it. Her approval did not remove the objection which the law interposes to such proceedings.
The judgment of the circuit court is reversed. Proceeding to render such judgment as that court should have rendered, the deed to Scott, and his deed to defendant arc declared void and set aside, and the lands declared to be subject to administration under the trusts created by the will, but without preju *524 dice to the rights of Florence Me. L. Welsh, and her successors in interest, who are to be treated as innocent incumbrancers of the lands to the extent of the amount still unpaid upon her legacy, and to be protected by the first proceeds of the lands. Without considering the power of this court to order a sale and distribution, we have concluded that ample relief can be more speedily administered by permitting the re-appraisement and re-sale of the premises to proceed from the probate court. The accounting between the administrator and the estate may as well be taken upon a settlement in that court. This should embrace all receipts and disbursements by the administrator in the course of his administration, including all costs paid by him ■ rents, issues and profits derived by him from the lands in question, or properly chargeable against him, down to the time of the re-sale to be made from the probate court, deducting the value of permanent improvements made by him upon the lands prior to the commencement of the plaintiff’s action below. Improvements made since that time, pending this litigation, are not proper allowances in his favor in such accounting .-

Judgment reversed.